IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES, | : |
| v. | : Crim. No. 93-536 (RBK) |
| MANUEL GARCIA, | : **OPINION** |
| Defendant. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon (1) Defendant Manuel Garcia's Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Compassionate Release Motion" or "Mot."), (ECF No. 124); (2) Mr. Garcia's Motion to Appoint Counsel, (ECF No. 129); and (3) Mr. Garcia's identical Motions to Hold in Abeyance this Court's consideration of his Compassionate Release Motion until after November 1, 2023, (ECF Nos. 132, 136).

For the reasons set forth below, the Court **GRANTS** Mr. Garcia's Motions to Hold in Abeyance and **DENIES** both the Compassionate Release Motion and the Motion to Appoint Counsel.

**I.     BACKGROUND**

   **A.     Procedural Background**

According to the first brief filed by the Government in opposition to Mr. Garcia's motions ("First Gov't Opp'n Br."), Mr. Garcia is an inmate in federal custody at United States Penitentiary Florence ("USP Florence") in Florence, Colorado. (ECF No. 127, First Gov't Opp'n Br. at 4). In September 1994, the Court sentenced Mr. Garcia to life in prison after he was found guilty by a jury of murder-for-hire, in violation of 18 U.S.C. § 1958. (*Id.*).

1

To initiate the present Compassionate Release Motion, Mr. Garcia first requested compassionate release from the warden of USP Florence on August 29, 2021. (*Id*., Ex. B). The warden denied that request on September 8, 2021. (*Id*., Ex. C). Mr. Garcia then filed his Compassionate Release Motion with the Court on December 19, 2022. The Government opposed Mr. Garcia's Motion in a brief filed on February 10, 2023. (*Id*.).

After briefing had been completed on his Compassionate Release Motion, Mr. Garcia filed three additional motions. First, on February 28, 2023, he requested that counsel be appointed to help him litigate his case. (ECF No. 129). Second, on June 20, 2023, he filed two identical motions asking the Court to wait to consider his Compassionate Release Motion until after November 1, 2023, (ECF Nos. 132, 136), which was the effective date for amendments to a section of the U.S. Sentencing Guidelines describing when prisoners may be eligible for sentence reductions. U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2023) (hereinafter the "Guidelines" or "U.S.S.G."). On December 20, 2023, the Court ordered the Government to respond to Mr. Garcia's additional motions. (ECF No. 139). The Government submitted a second brief opposing Mr. Garcia's motions on January 25, 2024 ("Second Gov't Opp'n Br."). (ECF No. 143).

This is the second time that Mr. Garcia has petitioned the Court for compassionate release. Mr. Garcia filed a previous motion seeking a reduction of his sentence, in 2001, that the Court construed as a motion arising under 18 U.S.C. § 3582(c). *See Garcia v. United States*, Civ. No. 19-18537, 2020 WL 3046294, at *1 (D.N.J June 2, 2020) (recounting procedural history of Mr. Garcia's cases). The Court denied that motion on the merits. *Id*.; *see also United States v. Garcia*, 204 F. Supp. 2d 790 (D.N.J. 2002), *aff'd*, 80 F. App'x 289 (3d Cir. 2003).

**A.     Factual Background**

      *i.     The Offense*

According to the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office for Mr. Garcia's sentencing, Mr. Garcia participated in a plan to kill a businessman so another person could collect on the businessman's $600,000 life insurance policy and thereby save a struggling business. (PSR ¶¶ 10–34).[1] Mr. Garcia appears not to have been one of the ringleaders of the plot, but he provided a key introduction that connected the ringleaders with the man who ultimately committed the killing. (*Id.* ¶ 21). On the morning of Jan. 20, 1993, that man, Chris Oscar DeJesus, shot the victim, Robert Cohen, three times outside Mr. Cohen's company in the Bronx, New York. (*Id.* ¶ 31). Mr. Cohen succumbed to his injuries roughly six weeks later, leaving behind a wife and two daughters, then ages 10 and 13. (*Id.* ¶ 32; ECF No. 143-1, Letter from Jessica Cohen Banish).

The plot to kill Mr. Cohen was several months in the making. The impetus for the murder-for-hire scheme was the poor financial position of a business belonging to a man named Richard Balter. (PSR ¶¶ 10–14). Mr. Balter's business was owed a significant amount of money by Mr. Cohen's business. (*Id.*). As a sign of good faith, Mr. Cohen agreed to take out a life insurance policy, naming Mr. Balter as the creditor-beneficiary. (*Id.* ¶ 15). As Mr. Balter's own creditors closed in, Mr. Balter and a business partner, Kenneth Cutler, went searching for someone to kill Mr. Cohen. (*Id.* ¶ 17). Garcia, DeJesus, Balter, and Cutler would all later be tried together and, on June 27, 1994, were all found guilty of murder-for-hire. (*Id.* ¶ 4).

In September 1992, Mr. Balter and Mr. Cutler met with Gustavo Gil, who agreed for a fee to help find them a killer, who would also be paid. (*Id.* ¶ 17). In December, Mr. Gil, in turn,

---

[1] Mr. Garcia's PSR is on file with the U.S. Probation Office in the District of New Jersey.

met with Mr. Garcia, who was an old acquaintance and former employee. (*Id*. ¶ 21). As recounted in the PSR:

> Gil informed Garcia of Baiter's and Cutler's request, and Garcia agreed to participate in the killing. As Gil testified [at the subsequent trial], Garcia agreed to participate in the murder and stated, "I have just the guy for you." Within minutes, Garcia introduced the [co-]defendant, Chris Oscar DeJesus, to Gil. Gil reiterated Balter's and Cutler's request. DeJesus agreed to do the killing for $10,000, but he demanded that he be paid one-half, $5,000, in advance.

(*Id*. ¶ 21).

Mr. Garcia's participation in the plot appears to have ended there. As stated in the PSR:

> The [trial] evidence shows that Garcia played no further role in the proceedings, and the record contains no evidence that DeJesus and Garcia ever cooperated in any way to accomplish the crime. In fact, the evidence the government presented tended to show that Garcia and DeJesus had had a falling out or disagreement over some unspecified matter, prior to the Cohen shooting; and that therefore they ceased any working together prior to the events leading to the shooting.

(*Id*. ¶ 41). As further evidence on this point, Mr. DeJesus told Mr. Gil shortly before the murder that "Garcia was no longer going to go with him (DeJesus)" to Mr. Cohen's workplace to help perform the killing. (*Id*. ¶ 28). Two days later, Mr. DeJesus and Mr. Gil drove together to Mr. Cohen's workplace, where Mr. DeJesus confronted and fatally shot Mr. Cohen. (*Id*. ¶ 31).[2]

### ii.   *Mr. Garcia's Medical Conditions and Behavioral Record*

Mr. Garcia, now 57, has been incarcerated for more than thirty years, starting with his initial arrest in November 1993. (First Gov't Opp'n Br. at 4). In his Compassionate Release Motion, he lists several medical conditions, including having suffered three mild strokes,

---

[2] The Probation officer who prepared Mr. Garcia's PSR did not recommend giving Mr. Garcia either an upward adjustment to his base offense level under U.S.S.G. § 3B1.1 for having played an "aggravating role" in the crime or a downward adjustment under U.S.S.G. § 3B1.2 for having played a "mitigating role." (PSR at 18). The officer reasoned, in part, that Mr. Garcia's introduction of Mr. DeJesus to Mr. Gil "was pivotal in the furtherance of the murder plot, as it was ultimately DeJesus who shot and killed Cohen. Garcia's role was not that of a minimal or minor participant." (*Id*.).

undergoing hydrocelectomy surgery to both testicles, having one testicle removed, and suffering from hypertension and hyperlipidemia. (Mot. at 17; ECF No. 124-1 at 5). Medical records submitted by the Government largely corroborate Mr. Garcia's assertions and add that Mr. Garcia has a history of chest pain. (First Gov't Opp'n Br., Ex. D).[3] Those records also reveal that Mr. Garcia tested positive for COVID-19 in March 2021 and refused to receive a COVID-19 vaccine the following month. (*Id.*).

Mr. Garcia and the Government paint divergent pictures as to Mr. Garcia's disciplinary record while in prison. Mr. Garcia states that he has "Virtually No Disciplinary History," which is "an exceptional achievement" for someone incarcerated in high and medium security facilities for as long as he has been. (Mot. at 8). The Government, on the other hand, identifies what it calls three "serious" infractions committed by Mr. Garcia and fifteen other disciplinary incidents. (First Gov't Opp'n Br. at 4). The serious incidents include stabbing and injuring another inmate with an improvised weapon in 2015; assaulting another inmate without causing serious injury in 2005; and assaulting another inmate causing serious injury in 1997. (*Id.*, Ex. A).

### iii. *Letter Opposing Mr. Garcia's Compassionate Release Motion*

The Government submitted a letter from Robert Cohen's daughter opposing Mr. Garcia's Motion for Compassionate Release. (ECF No. 143-1, Letter from Jessica Cohen Banish).

## II. LEGAL STANDARD

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

---

[3] To protect Mr. Garcia's medical information, the Government submitted this exhibit directly to the Court and did not file it on the docket.

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The changes implemented by the First Step Act allow prisoners to directly petition a district court, as opposed to the Bureau of Prisons ("BOP"), for a reduction in sentence so long as they have satisfied the exhaustion requirements. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020). Before defendants may petition a court to reduce their sentence under § 3582(c)(1)(A), they "must at least ask the Bureau of Prisons (BOP) to [bring a motion] on their behalf and give BOP thirty days to respond." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). Thirty days after submitting the request or after exhausting all administrative appeal rights, whichever is earlier, the defendant may move for compassionate release in the district court. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Once his motion is properly before the district court, a defendant must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*, Crim. No. 06-849, 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (quoting *United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the U.S. Sentencing Commission (the "Commission") with providing further guidance.

Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided guidance at U.S.S.G. § 1B1.13.[4] There, the Guidelines explain that extraordinary and compelling reasons exist under six enumerated circumstances. *Id*. Most relevant to the present Motion, the Guidelines state that medical circumstances can constitute an extraordinary and compelling reason for a sentence reduction where:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

*Id*. § 1B1.13(b)(1)(D). Separately, extraordinary and compelling reasons exist in some cases where a defendant has received an "unusually long sentence" that would be grossly disparate from the sentence likely to be imposed today for the same crime. *Id.* § 1B1.13(b)(6). The Guidelines also contain a catchall provision that allows courts to grant a sentence reduction when the defendant presents "any other circumstance . . . similar in gravity" to those that appear elsewhere in the policy statement. *Id*. § 1B1.13(b)(5).

"Compassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-

---

[4] The Commission amended this policy statement, effective Nov. 1, 2023, to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A) and to expand the list of "extraordinary and compelling reasons" that can warrant a sentence reduction. Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28254–59 (May 3, 2023).

1011, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023); *see also United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (holding that the district court acted within its discretion to deny compassionate release based on the § 3553(a) factors even where the Government did not dispute that extraordinary and compelling reasons were present). The defendant bears the burden of showing that he is entitled to compassionate release. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020).

### B. Motion to Appoint Counsel

There is no right to counsel for a criminal defendant seeking compassionate release under 18 U.S.C. § 3582(c). *United States v. Millhouse*, No. 20-3633, 2021 WL 3280789, at *3 n.4 (3d Cir. 2021) (citing *United States v. Manso-Zamora*, 991 F.3d 694, 696 n.2 (6th Cir. 2021) (collecting cases)); *United States v. Dorsey*, 520 F. Supp. 3d 681, 683–84 (E.D. Pa. 2021). "In determining whether to appoint counsel in compassionate release cases, a court must first determine whether the defendant's claim has some merit in fact and law." *United States v. Duncan*, Crim. No. 21-187, 2022 WL 1213466, at *2 n.2 (D.N.J. Apr. 22, 2022) (quoting *United States v. Gonzalez*, Crim. No. 02-446, 2021 WL 1088258, at *4 (E.D. Pa. Mar. 22, 2021)) (cleaned up). If meritorious, a district court has discretion to appoint counsel after considering:

> 1. [The movant's] ability to present his or her own case; 2. the difficulty of the particular legal issues; 3. the degree to which factual investigation will be necessary and the ability of the [movant] to pursue investigation; 4. the [movant's] capacity to retain counsel on his or her own behalf; 5. the extent to which a case is likely to turn on credibility determinations, and; 6. whether the case will require testimony from expert witnesses.

*Dorsey*, 520 F. Supp. 3d at 684 (citing *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993)).

### III. DISCUSSION

The Court addresses two preliminary matters before turning to the substance of Mr. Garcia's Compassionate Release Motion. First, the Court grants Mr. Garcia's Motions to Hold in

8

Abeyance the Court's consideration of his Compassionate Release Motion until after November 1, 2023. (ECF Nos. 132, 136), which Mr. Garcia sought because he believed the amendments to the Guidelines that took effect that day would "allow the Court greater latitude for relief requested by petitioner." (*Id*. at 1). Due to the Court's Order on December 20, 2023, that the Government file an additional response to Mr. Garcia's motions, briefing on the motions extended beyond November 1, 2023. Therefore, the Court assesses Mr. Garcia's request for compassionate release under the version of the U.S. Sentencing Guidelines that took effect on November 1, 2023.

Second, the Court finds that Mr. Garcia satisfied the exhaustion requirements such that the Court may consider his Compassionate Release Motion. Mr. Garcia first requested compassionate release from the warden of his detention facility on August 29, 2021, and then waited more than 30 days before filing his Motion before this Court. *See Harris*, 973 F.3d at 171. The Court therefore turns to the substance of his Compassionate Release Motion.

      A.      **Motion for Compassionate Release**

            i.      *Extraordinary and Compelling Reasons*

Mr. Garcia asserts that the risks he faces from COVID-19 due to his medical conditions are so extraordinary and compelling as to justify compassionate release. He argues that those medical conditions "make him uniquely susceptible to serious illness or death if infected" and that he "is powerless to take the preventative self-care measures" directed by the Centers for Disease Control ("CDC"), such as social distancing or frequent use of hand sanitizer, while in prison. (Mot. at 22). The Government counters that the BOP has taken "aggressive efforts" to protect those in its custody from COVID-19, (First Gov't Opp'n Br. at 5–6); that COVID-19

9

vaccines are now widely available to federal inmates, (*id*. at 7); and that Mr. Garcia's argument is undermined by his refusal to be vaccinated. (*Id*. at 11–15).

Most defendants who successfully move for compassionate release through § 3582(c)(1)(A) on COVID-19 grounds demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or medical conditions; and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville*, 463 F. Supp. 3d 585, 596–97 (W.D. Pa. 2020). The Government acknowledges that "an inmate who has not been offered a vaccine [and] who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19" can demonstrate an extraordinary and compelling reason that could justify compassionate release. (First Gov't Opp'n Br. at 10–11). However, the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 Fed. App'x 157, 161 n.16 (3d Cir. 2020).

The Court finds that Mr. Garcia has not shown that extraordinary and compelling reasons warrant a reduction in his sentence. As discussed, the Guidelines state that medical circumstances can constitute an extraordinary and compelling reason for a sentence reduction where:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

10

U.S.S.G. § 1B1.13(b)(1)(D). Mr. Garcia has not demonstrated that the first or third prong are met in this case. The Court will discuss each criterion in turn.

First, the correctional facility where Mr. Garcia is housed is not affected or at imminent risk of being affected by a COVID-19 outbreak or by an ongoing public health emergency. There is currently one active case of COVID-19 among inmates at the Federal Correctional Complex in Florence ("FCC Florence"), which includes USP Florence. *Inmate COVID-19 Data*, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited February 23, 2024). More than half the inmate population there is fully vaccinated against COVID-19, *id.*,[5] and the Government represents that the BOP has offered a vaccine to every inmate in BOP-managed institutions. (First Gov't Opp'n Br. at 7). The vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within a facility. *See United States v. Martinez*, Crim. No. 16-503, 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison."). Moreover, the national emergency related to the COVID-19 pandemic that was declared by President Trump on March 13, 2020, was terminated by President Biden on April 10, 2023. Pub. L. No. 118-3, 139 Stat. 6. Therefore, USP Florence is not affected by an ongoing public health emergency related to COVID-19.

Second, although Mr. Garcia does present some medical conditions that put him at elevated risk of illness from COVID-19, he has not demonstrated that such risk cannot be adequately mitigated in a timely manner. Mr. Garcia suffers from two conditions—hypertension and a history of strokes—that appear on the CDC's list of medical conditions that increase a

---

[5] As of February 23, 2024, 1,442 inmates out of a population of 2,526 at FCC Florence—roughly 57%—have been fully vaccinated.

11

person's risk of severe illness or death from COVID-19. *People with Certain Medical Conditions*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023). However, Mr. Garcia's decision to decline a COVID-19 vaccine when offered undermines his argument that the risk of an COVID-19 infection constitutes an extraordinary and compelling reason for a reduction in his sentence. The risk of COVID-19 can be timely mitigated, but Mr. Garcia has declined to do so.

The Government cites numerous cases in which district courts have denied compassionate release motions premised on concerns about COVID-19 where the defendant has refused to take preventative measures to protect himself or herself from the virus. *See*, *e.g.*, *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."); *United States v. Cooper*, Crim. No. 01-512-05, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021) ("While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered."); *United States v. Jackson*, Crim. No. 07-40-2, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) ("[T]he Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release."); *United States v. Ortiz*, Crim. No. 18-264, 2021 WL 1422816, at *4 n.6 (E.D. Pa. Apr. 15, 2021) ("Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize

other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."). The Court agrees with the reasoning of these other courts.

Even if Mr. Garcia had been vaccinated, his hypertension and history of strokes alone are not enough to constitute extraordinary and compelling reasons for compassionate release. "Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release." *United States v. Hannigan*, Crim. No. 19-373, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22, 2021) (citing cases). The Third Circuit has likewise recognized in an unpublished decision that "[g]iven vaccine availability, a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling reason for release unless he can convincingly show that he is 'unable to receive or benefit from a vaccine' or that he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" *United States v. Estevez-Ulloa*, No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) (citing *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022)). Mr. Garcia makes neither showing here.

Mr. Garcia puts forth two other arguments for compassionate release, both of which fail. First, Mr. Garcia argues that "under today's sentencing scheme, the Court would not have the authority to give him such a long and harsh sentence." (Mot. at 11). Mr. Garcia appears to invoke U.S.S.G. § 1B1.13(b)(6), which states that an extraordinary and compelling reason for a reduction in sentence may exist where a defendant has received an "unusually long sentence" that would be grossly disparate from the sentence likely to be imposed today for the same crime.[6]

---

[6] The Government argues that the Commission exceeded its authority in promulgating U.S.S.G. § 1B1.13(b)(6). (Second Gov't Opp'n Br. at 8–17). The Court takes no position on this matter.

However, Mr. Garcia fails to demonstrate that the life sentence he received in 1994 would be grossly disparate from that he would receive if sentenced today for the same crime. As the Government correctly points out, Mr. Garcia's total offense level calculated under the 1993 Guidelines Manual—Level 43—would be the same under the current Guidelines Manual. *See* PSR ¶ 43; U.S.S.G. §§ 2E1.4, 2A1.5, 2A1.1. Then, as now, an offense level of 43 corresponds to a Guidelines range of life imprisonment. U.S.S.G. § 5A (1993 and 2023 versions). Therefore, Mr. Garcia cannot demonstrate extraordinary and compelling reasons for compassionate release due to an "unusually long sentence" under U.S.S.G. § 1B1.13(b)(6).

Second, the Government construes Mr. Garcia's motion as advancing the claim that he should be granted compassionate release because his life sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (First Gov't Opp'n Br. at 18–19). Mr. Garcia specifically cites *Apprendi* only once in his Motion, and only when discussing the procedural background of his various legal cases. (Mot. at 2). He also cites *United States v. West*, No. 06-20185, 2022 WL 16743864, at *7–8 (E.D. Mich. Nov. 7, 2022), a case in which the district court held that an *Apprendi* violation provided grounds for granting a compassionate release motion. (Mot. at 5). Following the guidance of the Third Circuit, and to the extent Mr. Garcia is raising an *Apprendi* claim, the Court declines to consider such a claim as part of his Compassionate Release Motion. *See United States v. Roche*, No. 22-3094, 2023 WL 4556723 (3d Cir. July 17, 2023), *as amended* (July 19, 2023) ("[A] motion under § 3582(c)(1) is not the proper means for [the defendant] to challenge the constitutional validity of his sentence.").

Mr. Garcia does not present any "other reasons" for compassionate release that rise to the level of being extraordinary and compelling. *See* U.S.S.G. § 1B1.13(b)(5).[7] Therefore, although the Court does not wish to minimize Mr. Garcia's concern for his well-being or the seriousness of COVID-19 for those in custody, we find that Mr. Garcia has failed to demonstrate extraordinary and compelling reasons that warrant a reduction in his sentence.

    *ii.    Section 3553(a) Factors*

Even if Mr. Garcia were able to demonstrate extraordinary and compelling reasons for a reduction in his sentence, granting the Motion would not be appropriate upon consideration of the § 3553(a) factors. As noted, in considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The nature and circumstances of Mr. Garcia's offense, *see* 18 U.S.C. § 3553(a)(1), reveal it to be an especially heinous crime. Although Mr. Garcia did not mastermind the plot to kill Mr. Cohen or pull the trigger that killed Mr. Cohen, Mr. Garcia provided the introduction without which the murder-for-hire scheme may not have been carried out. The Court agrees with the characterization of Mr. Garcia's role written by the Probation Officer who prepared Mr. Garcia's

---

[7] For the same reasons the Court finds that extraordinary and compelling reasons do not exist under § 1B1.13(1)(D), they do not exist under § 1B1.13(1)(B) either.

PSR: Mr. Garcia's introduction of Mr. DeJesus to Mr. Gil "was pivotal in the furtherance of the murder plot, as it was ultimately DeJesus who shot and killed Cohen. Garcia's role was not that of a minimal or minor participant." (PSR at 18). The plot itself was motivated by unchecked greed: the murder of a husband and father of two for the prospect of $600,000 in life insurance proceeds.

Given the nature and circumstances of Mr. Garcia's offense, the Court is mindful of the need for the sentence imposed to reflect its seriousness, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A)–(C). Releasing Mr. Garcia would send the wrong message to the public about the gravity of his offense, the continuing effects of which Mr. Cohen's daughter describes in her letter to the Court. (ECF No. 143-1, Letter from Jessica Cohen Banish). Similarly, the Court believes that denying Mr. Garcia's Motion best promotes respect for the law, provides just punishment, and sends the message to society at large that the justice system will respond aggressively to crimes of this nature. Moreover, the Court is concerned about Mr. Garcia's history of twice assaulting another inmate and causing serious injury, most recently in 2015. Denying the Motion will also help protect the public from potential further crimes.

This Court has the discretion to deny a compassionate release motion based on the § 3553(a) factors even where a defendant can show that extraordinary and compelling reasons support his release. *See Alexander*, 2023 WL 4198042, at *1. Courts in other districts have denied compassionate release to defendants with serious medical conditions for this very reason. *See United States v. Logan*, Crim. No. 96-20, 2020 WL 730879, at *3 (W.D. Ky. Feb. 13, 2020) (denying reduction in sentence for 81-year-old defendant with prostate cancer, glaucoma, blindness, and diabetes who started hotel fire that killed four people); *United States v. Levine*,

Crim. No. 91-3, 2020 WL 2537786, at *4 (N.D. Ind. May 19, 2020) (denying reduction for 78-year-old defendant with advanced heart disease, Non-Hodgkin's B-Cell Lymphoma, rheumatoid arthritis, and a lung condition serving life sentence in murder-for-hire scheme); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (affirming the denial of compassionate release for a 62-year old defendant with terminal liver cancer due to the serious nature of his drug crime and criminal history).

Here, even if Mr. Garcia could present extraordinary and compelling reasons for a reduction in sentence, the Court would still deny the Motion based on the § 3553(a) factors.

### B.     Motion to Appoint Counsel

For the reasons stated above, Mr. Garcia's Compassionate Release Motion does not have arguable merit in fact and law. Therefore, his Motion to Appoint Counsel is denied. *See Millhouse*, 2021 WL 3280789, at *3 ("[G]iven that [the defendant's] motion for compassionate release lacked arguable merit, the District Court did not err in denying his motion for appointment of counsel."); *United States v. Rivera*, Crim. No. 06-849, 2022 WL 3152654, at *4 n.9 (D.N.J. Aug. 8, 2022) ("Defendant is not entitled to counsel on a compassionate release motion, and it would be a waste to appoint counsel where the motion is futile.").

## IV.   CONCLUSION

For the foregoing reasons, Mr. Garcia's identical Motions to Hold in Abeyance this Court's consideration of his Compassionate Release Motion until after November 1, 2023, (ECF

Nos. 132, 136) are **GRANTED**. Mr. Garcia's Compassionate Release Motion (ECF No. 124) is **DENIED**. Mr. Garcia's Motion to Appoint Counsel (ECF No. 129) is also **DENIED**.

An Order follows.

Dated:  February 23, 2024                                                            /s/ Robert B. Kugler
                                                                                                            ROBERT B. KUGLER
                                                                                                            United States District Judge